## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

YVONNE PINKSTON, as guardian of
the estate of K.S., a minor child,
Plaintiff

v.

THE BOARD OF EDUCATION OF
THE CITY OF CHICAGO *et al.*,
Defendants

No. 19 CV 6477

Judge Jeremy C. Daniel

## MEMORANDUM OPINION AND ORDER

Plaintiff Yvonne Pinkston brings this suit as guardian of K.S., her minor child, against the Board of Education of the City of Chicago (the "Board"), Cynthia Miller, Maurice Polk, and Pamela Smith, alleging that they violated federal and state law in failing to respond appropriately to the bullying K.S. experienced at Fiske Elementary IB World School. On the Board's motion, Plaintiff's initial complaint was dismissed, in part, under Federal Rule of Civil Procedure 12(b)(6) with leave to amend. Plaintiff filed a First Amendment Complaint ("FAC"). R. 64. Defendants Miller, Smith, and Polk (collectively, the "Individual Defendants") now move to dismiss certain claims raised in the FAC under Rule 12(b)(6). Specifically, the Individual Defendants move to dismiss Plaintiff's Fourteenth Amendment equal protection claim under 42 U.S.C. § 1983 (Count I). Additionally, Defendants Miller and Smith each move to dismiss Plaintiff's state law claims for assault (Counts VIII and IX) and intentional infliction of emotional distress (Counts XII and XIII). For the reasons discussed below, the Individual Defendants' motion is granted in part and denied in part.

## BACKGROUND[1]

Nine-year-old K.S. is an African American male student who began attending Fiske Elementary IB World School ("Fiske") as a fourth grader in the fall of 2018. R. 64 ¶ 4. Fiske is located in Chicago's Englewood neighborhood and is part of the Chicago Public School ("CPS") system. *Id.* ¶¶ 6-7. The school is managed, supervised, and governed by the Board. *Id.* ¶ 6. During K.S.'s time at Fiske, Defendant Miller was the principal, Defendant Polk was the school security officer, and Defendant Smith was the school counselor. *Id.* ¶¶ 9-11.

Before transferring to Fiske, K.S. attended a public school in Lafayette, Indiana, where he received no disciplinary reports and excelled academically. *Id.* ¶¶ 12-13. However, following his enrollment at Fiske, K.S. became a target of his peers' bullying and harassment. *Id.* ¶¶ 15-16. K.S.'s mother and grandparents complained about the bullying, but the school administrators did not take any action in response. *Id.* ¶ 15. Further, when K.S. complained, school administrators refrained from punishing the bullies and instead removed K.S. from class and made him sit in the office as punishment. *Id.* ¶ 16.

Plaintiff's case against the Individual Defendants stems from an incident that occurred on March 26, 2019. *See generally id.* That day, K.S. and another student got into a fight at school during which the other student struck K.S. and K.S. struck him back. R. ¶ 17. The students were sent to the school counselor to explain what

---

[1] For purposes of this motion, the Court accepts as true Plaintiff's factual allegations and draws all reasonable inferences in her favor. *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021).

transpired, and K.S. denied starting the fight.[2] *Id.* ¶¶ 18-19. In addition to listening to reports about what occurred from K.S. and the other student, the counselor spoke to a student group known as "Safe and Responsible Students." *Id.* ¶ 20. The Safe and Responsible Students group identified K.S. as the initial aggressor. *Id.* The other student was permitted to return to class, and K.S. remained in the counselor's office. *Id.* ¶ 21.

At some point—the FAC does not state when or why—K.S. walked out of the counselor's office and leaned up against a wall in the hallway. *Id.* ¶ 22. Security Officer Polk approached K.S., grabbed him by the wrists, leaned over, and spoke aggressively in his face. *Id.* ¶ 23. K.S. hung his head and did not respond. *Id.* During this interaction with Polk, K.S. overheard Principal Miller on the walkie-talking instructing the security officer to bring K.S. to her office. *Id.* ¶ 24. Polk yanked K.S. into Miller's office, where Miller shouted at him and told him that she was going to "put him outside." *Id.* ¶¶ 25-26. The weather that day varied between 27 to 46 degrees, and K.S. wore only a short sleeve polo shirt and khaki pants. *Id.* ¶¶ 30-31. When K.S. did not respond, Miller directed Polk to drag K.S. toward the school doors. *Id.* ¶ 27. Miller and Counselor Smith watched Polk push K.S. outside into the cold, and the three of them created a barrier so as to not allow K.S. to come back into the building. *Id.* ¶¶ 28-29. K.S. attempted to reenter the school through other doors, but

---

[2] Plaintiff does not identify the name of the counselor with whom he spoke, and the Court is unaware whether Fiske has multiple counselors; thus, it is unclear whether K.S. spoke with Smith or someone else.

found them all locked. *Id.* ¶ 32. He began to cry and looked for a place to take shelter. *Id.* ¶ 33.

A few minutes later, an unidentified Fiske employee called the police and reported that a student was missing after walking out of the school. *Id.* ¶ 34; R. 64-1. Thirty minutes later, the employee called the police again and requested an ambulance, stating that K.S. was fighting everyone and was kicking, biting, and scratching. R. 64 ¶ 36, R. 64-1. A Chicago Police Department ("CPD") officer responded to the second call and found K.S. outside on the playground. R. 64 ¶ 39. The CPD officer brought K.S. into the school's main office, and Miller told the officer that K.S. had run out of the building. *Id.* ¶¶ 40-41. She repeated the same account to K.S.'s grandfather when he arrived to pick up K.S. from school, stating, as quoted by Plaintiff:

> K.S. pulled his fists back like he was going to hit me because he wanted to leave this office and wanted to run around the building so that we could chase him. … K.S. screamed and said 'I don't want to be here, don't put your hands on me, if you put your hands on me I'm going to kick you, I'm going to punch you, I'm going to hurt you' and then decided to leave the building because I told him if you can't calm yourself down I'm going to have to call the police and then he said 'I don't want to be here and bust through us and went out the door.'

*Id.* ¶¶ 42-44. Plaintiff alleges that Miller's version of events differ from what actually transpired on March 26, 2019. *Id.* at ¶¶ 45-47.

About a month later, on April 25, 2019, K.S. again complained to the school that his peers were harassing him. *Id.* ¶¶ 48-49. In response to the complaint, Clerk Searcy, an administrative assistant at Fiske, called the police and reported that K.S.

was "being violent or harmful to himself" and referred to K.S. as a "disturbed mental." *Id.* ¶¶ 49-51. Plaintiff alleges that Searcy made this statement despite being aware that K.S. had undergone psychological testing and was found to not have any mental deficiencies. *Id.* ¶ 52.

K.S. transferred to another CPS school later that month due to the continued harassment. *Id.* ¶ 53. The following school year, in August 2019, K.S. began attending a charter school where he is currently enrolled. *Id.* ¶ 54. K.S. is excelling academically and has not experienced any abuse or harassment. *Id.* Plaintiff alleges, however, that K.S. has experienced lasting psychological harm as a result of his time at Fiske and sees a psychologist weekly. *Id.* ¶¶ 55-56.

Plaintiff filed suit on behalf of K.S. alleging various federal and state law violations against the City of Chicago, the Board, and the Individual Defendants—Miller, Smith, and Polk. R. 1. The City of Chicago and the Board each filed a Rule 12(b)(6) motion to dismiss the claims against them. R. 15, 19. The City of Chicago's motion was granted (without objection by Plaintiff). R. 22. The Board's motion was also granted save for the claims premised on theories of respondeat superior and indemnification, as the Individual Defendants had not yet appeared or responded to the complaint. R. 57.

Plaintiff was granted leave to amend and filed this FAC against the Board and the Individual Defendants, asserting claims under 42 U.S.C. § 1983 and Illinois

common law. R. 64.[3] The Individual Defendants now move to dismiss certain claims asserted against them under Rule 12(b)(6).[4]

Together, the Individual Defendants move to dismiss Plaintiff's Fourteenth Amendment equal protection claim under 42 U.S.C. § 1983 (Count I). Defendant Miller moves to dismiss Plaintiff's state law claims for assault (Count VIII) and intentional infliction of emotional distress ("IIED") (Count XII). And Defendant Smith likewise moves to dismiss Plaintiff's state law claims for assault (Count IX) and IIED (XIII). The Court now addresses the merits of their motion.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, the complaint must provide enough factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in her favor. *Cheli v. Taylorville Cmty. Sch. Dist.*, 986 F.3d 1035, 1038 (7th Cir. 2021). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," however, "do not suffice" to withstand a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather,

---

[3] Jurisdiction over Plaintiff's federal claims is proper under 28 U.S.C. § 1331. The Court may exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

[4] The Board has responded to all the claims raised in the FAC that are asserted against it, R. 72, as has Defendant Polk, R. 73, with the exception of Count I which is the subject of the instant motion to dismiss. *Id.* at 13.

the plausibility standard is met where the plaintiff's factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## ANALYSIS

### I. PLAINTIFF'S EQUAL PROTECTION CLAIM UNDER § 1983 AGAINST DEFENDANTS MILLER, SMITH, AND POLK (COUNT I)

The Court first considers Plaintiff's Fourteenth Amendment equal protection claim under 42 U.S.C. § 1983 against the Individual Defendants.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Here, Plaintiff alleges that the Individual Defendants violated K.S.'s right to equal protection as guaranteed by the Fourteenth Amendment. R. 64 ¶¶ 64-70.

The Equal Protection Clause of the Fourteenth Amendment is most commonly invoked "as a guard against state and local government discrimination on the basis of race, national origin, sex, and other class-based distinctions." *FKFJ, Inc. v. Vill. of Worth,* 11 F.4th 574, 588 (7th Cir. 2021) (citing *Geinosky v. City of Chi.*, 675 F.3d 743, 747 (7th Cir. 2012)). The protection afforded under the Equal Protection Clause also extends to "purely arbitrary government classifications, even when a classification consists of singling out just one person for different treatment for arbitrary and

irrational purposes." *Id.* (citing *Geinosky*, 675 F.3d at 747). The latter is known as a "class-of-one" claim. *Id.*

Turning first to the more familiar equal protection claim, Plaintiff does not plausibly allege class-based discrimination. To state a class-based equal protection claim, a plaintiff must plead that he or she was discriminated against based on membership in a definable class, and that the state actor acted with a "nefarious discriminatory purpose." *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015) (quoting *Harris v. McRae,* 488 U.S. 297, 322 (1980)). Beyond identifying that K.S. is African American, R. 64 ¶ 5, the FAC does not contain any factual allegations that K.S. was discriminated against because of his race. *See generally*, *id.* This omission defeats Plaintiff's equal protection claim at the pleadings stage. *See, e.g., Sung Park v. Ind. U. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012) (explaining that the failure to specifically plead that race "had anything to do with what happened" dooms a claim of race-based discrimination); *Taylor v. Nunez*, No. 18 C 7844, 2019 WL 5393996, at *4 (N.D. Ill. Oct. 22, 2019) (explaining that plaintiff's failure to "plead any facts, apart from his own race, from which the court can draw an inference that defendant's actions were at all motivated by plaintiff's race" defeats equal protection claim).

In her response brief, Plaintiff concedes that she is proceeding solely under a class-of-one theory. R. 78 at 3-5. To state a class of one equal protection claim, a plaintiff must allege: "(1) that [he or she] has been intentionally treated differently from others similarly situated, and (2) that there is no rational basis for the difference

in treatment." *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 771 (7th Cir. 2021) (citations omitted) (cleaned up); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (recognizing class-of-one equal protection claim). When considering a class-of-one claim in the context of a Rule 12(b)(6) motion, courts must "take as true all of the complaint's allegations and reasonable inferences that follow, … and apply the resulting facts in light of the deferential rational basis standard." *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 546 (7th Cir. 2008) (internal quotation marks and citations omitted) (cleaned up). To survive the motion to dismiss, the class-of-one plaintiff "must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Id.*

Plaintiff alleges that the Individual Defendants intentionally treated K.S. differently than other similarly situated students by failing to protect him from bullying and by sending him to the principal's office when he complained of said bullying. R. ¶¶ 16, 66. Plaintiff further asserts that the Individual Defendants had no rational basis for their disparate treatment of K.S. *Id.* ¶ 66. The Individual Defendants argue that Plaintiff's class-of-one claim fails for two reasons: (1) the FAC fails to identify a student that is similarly situated to K.S. in all material respects; and (2) the FAC fails to adequately allege the absence of a rational basis for the Individual Defendants' conduct. R. 74 at 5-7.

With respect to a similarly situated student, Plaintiff fails to sufficiently allege a comparator in the FAC. Typically, to prevail on a class-of-one claim, a plaintiff must identify a comparator, *i.e.*, "some similarly situated person who was treated

differently," to show the absence of a rational basis for the state actor's conduct. *145 Fisk, LLC*, 986 F.3d at 771. "If all principal characteristics of the two individuals are the same, and one received more favorable treatment, this may show there was no proper motivation for the disparate treatment." *Id.* (cleaned up).

In this case, the FAC alleges, in conclusory fashion, that the Individual Defendants treated K.S. differently than "similarly situated students." R. 64 ¶ 66. It does not identify who these students are or how they are comparable to K.S. Even assuming that the other student involved in the March 26th fight is K.S.'s intended comparator, there are no factual allegations, other than the two being students involved in a fight, from which this Court can infer that the two students are similar in all material respects. *See D.S.*, 799 F.3d at 799-800 ("similarly situated" means "*prima facie* identical in all relevant respects or directly comparable … in all material respects"); *see also Sung Park*, 692 F.3d at 833 (affirming dismissal where there was "no reason to suppose that the[ ] students are comparable to Park. We do not know, for example, whether these students, like Park, failed several classes, failed to schedule required remediation exams, engaged in unprofessional exchanges with their professors, and breached the university's confidentiality policy."). Nevertheless, the failure to identify a comparator is not fatal where "the alleged facts so clearly suggest harassment by public officials that has no conceivable legitimate purpose." *Geinosky*, 675 F.3d at 748.

This brings the Court to the Individual Defendants' second argument. Plaintiff has failed to show the absence of a conceivable rational basis for the Individual

Defendants' allegedly disparate treatment of K.S. This omission is fatal at the pleadings stage. Under the rational basis standard, a class-of-one plaintiff has the "burden to 'negative any reasonably conceivable state of facts that could provide a rational basis'" for the official action.[5] *145 Fisk, LLC*, 986 F.3d at 770-71 (quoting *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001)); *see also Doe v. Bd. of Edu. of City of Chi.*, 611 F.Supp.3d 516, 534 (N.D. Ill. 2020) ("government conduct in class-of-one claims carries a presumption of rationality to ensure that not every tort committed by a state actor mutates into a federal constitutional inquiry"). As the Seventh Circuit has explained, "… it is not so easy to file a complaint that complies with [*Twombly*] if [class-of-one] supplies the theory of the case[;] [t]he plaintiff must present a set of facts that plausibly depict official action utterly unsupported by a rational basis." *Frederickson v. Landeros*, 943 F.3d 1054, 1060 (7th Cir. 2019). "Even at the pleadings stage, all it takes to defeat [a class-of-one] claim is a *conceivable* rational basis for the difference in treatment." *Miller*, 784 F.3d at 1121 (cleaned up) (emphasis in original).

In response to the motion to dismiss, Plaintiff clarifies that the disparate treatment that she is challenging is the Individual Defendants' purported failure to protect K.S. from bullying by making him sit in the office while the harassing students are permitted to return to class. R. 78 at 4-5. She claims that the Individual

---

[5] Although the "outer bounds of class-of-one equal protections claims" are unsettled in the Seventh Circuit, *Frederickson v. Landeros*, 943 F.3d 1054, 1060 (7th Cir. 2019), it is well established that, at the pleading stage, a plaintiff must "adequately allege[ ] that the state actor … intentionally discriminated against him without any rational basis for th[e] differential treatment." *Id.*

Defendants "lacked [a] rational basis for making K.S. sit in the office rather than in his classroom as punishment," and that this allegation is sufficient to state a plausible class-of-one claim. R. 78 at 5.

The FAC, however, reveals a rational basis for the allegedly disparate treatment. *See D.B. ex rel. Kurtis B. v. Kop*, 725 F.3d 681, 686 (7th Cir. 2013) ("the proper question in [class-of-one claims] is this: Does the complaint reveal a rational basis for treating [the plaintiff] differently …?"). K.S. was involved in a fight at school during which he struck another student. R. 64 ¶ 17. Even accepting as true that K.S. did not initiate the fight, it is not difficult to surmise legitimate reasons for requiring a student involved in a physical altercation to sit in the principal's office. *See, e.g., Eilenfeldt v. United C.U.S.D. #304 Bd. of Educ.*, 84 F. Supp. 3d 834, 846 (C.D. Ill. 2015*)* (dismissing plaintiff's class-of-one equal protection claim where it was conceivable that defendants had legitimate pedagogical and disciplinary reasons for their response to alleged bullying).

Because Plaintiff has failed to sufficiently plead either the existence of a comparator or the absence of rationality, there is no basis from which this Court can infer that the Individual Defendants' treatment of K.S. was "purely arbitrary." *FKFJ, Inc.,* 11 F.4th at 588. For example, this is not a case like *Doe v. Bd. of Edu. of City of Chi.*, where there was no conceivable rational basis for the school employee's alleged pedophilia, 611 F.Supp.3d at 534 ("the Amended Complaint does not reveal any conceivable rational basis for why Velarde would need to 'improperly' touch James Doe's penis multiple times in the shower—and on more than one occasion …"); nor is

this a case where the FAC reveals a pattern of arbitrary punishments. *See Brookman ex rel. A.B. v. Reed-Custer Cmty. Unit, Sch. Dist. 255-U*, No. 18 C 7836, 2019 WL 4735395, at *2, 8 (N.D. Ill. Sept. 27, 2019) ("Although they identify no comparators, there is no conceivable legitimate purpose to 'routinely' mark a punctual student tardy and threaten to punch that student."). Rather, the allegations involving the Individual Defendants are circumscribed to the events taking place on March 26, 2019. The FAC is void of any other facts from which this Court could infer that the Individual Defendants engaged in a pattern of protecting all students from bullying save for K.S. *See Brookman*, 2019 WL 4735395, at *8 (dismissing class-of-one claim where complaint lacked facts sufficient to infer that principal or vice principal punished all bullies except A.B.'s bullies). And other than parroting her allegations from the FAC, Plaintiff offers no response, nor citation to legal authority, to demonstrate how requiring K.S. to sit in the office following an incident of bullying is irrational or otherwise arbitrary. *See* R. 78 at 4-5.

In sum, Plaintiff's allegations do not support a reasonable inference that K.S. was treated differently from similarly situated students, nor that there lacked a conceivable legitimate purpose for the allegedly disparate treatment. The Court therefore finds that Plaintiff has not met her burden of pleading a plausible class-based or class-of-one equal protection claim. Accordingly, the Individual Defendants' motion to dismiss Count I is granted.

13

## II.  PLAINTIFF'S STATE LAW CLAIMS AGAINST DEFENDANTS MILLER AND SMITH

The Court next considers Plaintiff's state law assault and IIED claims against Defendants Miller and Smith.[6]

### A.  Assault

The Court begins with Plaintiff's state law assault claims. To state a claim for assault under Illinois law, a plaintiff must plead: "(1) a threatening gesture, or an otherwise innocent gesture made threatening by the accompanying words, that (2) creates a reasonable apprehension of an imminent battery." *Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004) (emphasis omitted). A battery is "the unauthorized touching of another that offends a reasonable sense of personal dignity." *Smith v. City of Chi.* 143 F. Supp. 3d 741, 760 (N.D. Ill. 2015).

As to Miller, Plaintiff alleges that she: "approached K.S. in a threatening manner," that this "caused K.S. reasonable apprehension of immediate offensive conduct," and that Miller's "physical positioning surrounding K.S." made him reasonably believe that Miller "could, and would, make the threatened offensive contact to his person." R. 64 ¶¶ 111-13. Plaintiff repeats the same allegations for her assault claim against Smith. *Id.* at ¶¶ 116-18. Miller and Smith contend that these allegations are conclusory and do not support a reasonable inference that their conduct gives rise to liability for assault. R. 74 at 7-9.

---

[6] The Court can reach these claims because Plaintiff's FAC contains federal causes of action beyond that asserted in Count I, and the state law claims asserted against Miller and Smith "derive from a common nucleus of operative fact" as these other federal claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); 28 U.S.C. § 1367.

Plaintiff has not plausibly stated a claim for assault against either Miller or Smith. Her allegations comprise nothing more than a recital of the elements of an assault claim supported by mere conclusory statements, which is insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678-79. Although Plaintiff need not provide detailed facts, she must provide at least "some specific facts to ground [her] legal claims." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Plaintiff's bare-bone allegations as to Miller and Smith's "approach" and "position[ing]" do not suffice.

Moreover, Plaintiff's factual allegations elsewhere in the FAC do not support her conclusory statements that Miller and Smith's conduct placed K.S. in imminent apprehension of offensive contact. Plaintiff states that Miller and Smith "watched Mr. Polk push K.S. outside" and "created a barrier" so "as to not allow K.S. to remain in the school building." R. 64 ¶¶ 28-29. But such acts of "watching" and "positioning" untethered to a verbal threat or menacing gesture do not suffice to state a plausible claim of assault. *See Bittman v. Fox*, 107 F. Supp. 3d 896, 901–02 (N.D. Ill. 2015) (holding that plaintiff failed to state a claim for assault where she alleged only that defendant "followed and approached her" but did not allege that he made any verbal threat or threatening gesture).

Nor does Miller's statement to K.S. that she was going to "put him outside," transform her conduct into an assault. *See* R. 64 ¶ 26. "Words alone seldom if ever are sufficient to constitute an assault; rather, there must be an accompanying gesture that is either inherently threatening or made so by the accompanying words." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 715 (7th Cir. 2013) (citing *Kijonka*, 363 F.3d at

15

647); *People v. Floyd*, 663 N.E.2d 74, 76 (Ill. App. Ct. 1996)). Here, Plaintiff alleges only that Miller told K.S. that she was going to put him outside, nothing more. A verbal threat that lacks both an accompanying gesture and the expectation of an imminent harmful or offensive contact, such as Miller's statement, is not an assault. *See Kijonka*, 363 F.3d at 647 ("A merely verbal threat of indefinite action in the indefinite future is not an assault."); *Torr v. City of Chi.*, No. 15 C 8383, 2018 WL 950099, at *13 (N.D. Ill. Feb. 20, 2018), *aff'd*, 932 F.3d 579 (7th Cir. 2019) ("even if one were to take [these] words as threatening in some manner," there is no indication that they were accompanied by "any threatening gesture of *immediate* violence") (emphasis in original).

In an attempt to salvage K.S.'s assault claims against Miller and Smith, Plaintiff directs the Court to look at the allegations that she asserted in support of her assault and battery claims against Polk. R. 78 at 6. According to Plaintiff, the allegations against Polk "must be considered in deciding whether Plaintiff plead[ed] facts plausible for the assault claims against Miller and Smith." *Id.* Plaintiff cites no legal authority supporting this proposition, nor does she assert any theories of liability that would allow the Court to hold Miller and Smith liable for Polk's actions. In any event, Plaintiff seems to suggest that the allegations that Polk "yanked K.S. into Miller's office and then pushed him outside of the school," made K.S. fearful of what Miller and Smith might do. R. 78 at 6. "But a victim's fear … cannot transform a remote threat into an assault." *Kijonka*, 363 F.3d at 648; *see also Bittman*, 107 F. Supp. 3d at 902 (explaining that plaintiff's fear that defendant's actions could turn

violent given his history of harassment did not transform defendant's conduct into an assault).

For the reasons above, Plaintiff has failed to state a claim for assault against either Miller or Smith. The Court therefore grants Defendants Miller and Smith's motion to dismiss Counts VIII and IX.

### B. IIED

Finally, the Court considers Plaintiff's state law IIED claims. To state an actionable IIED claim under Illinois law, a plaintiff must allege that: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that [his or her] conduct would inflict severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress." *Richards v. U.S. Steel,* 869 F.3d 557, 566 (7th Cir. 2017) (citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003)).

As for Miller, Plaintiff alleges that she caused K.S. to suffer severe emotional distress and mental anguish by orchestrating his removal from the school building and later lying to K.S.'s grandfather and the CPD officer as to the reason that K.S. was locked outside. R. 64 ¶¶ 26-27, 30-31, 41, 43-44, 46, 33. Miller contends that these allegations are insufficient to demonstrate that her conduct was extreme and outrageous or that she intended to cause K.S. severe emotional distress. R. 74 at 10.

The outrageousness standard is demanding. To qualify, a defendant's conduct "must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *Richards*, 869 F.3d at 566 (citing *Feltmeier*, 798 N.E.2d at 80-81). "[M]ere insults, indignities, threats, annoyances, petty oppressions,

17

or other trivialities" do not suffice to state an actionable IIED claim. *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 623 (7th Cir. 1989). In determining whether conduct is extreme and outrageous, courts consider, among other things, the degree of power or authority that the defendant has over the plaintiff. *Wordlow v. Chi. Bd. of Educ.*, No. 16 C 8040, 2018 WL 6171792, at *13 (N.D. Ill. Nov. 26, 2018) (citing *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001)). "The 'more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment.'" *Id.* (quoting *Honaker*, 256 F.3d at 491).

The FAC plausibly alleges an IIED claim against Miller based on her instruction to have K.S. removed from the school building. Miller, as principal of Fiske, held a position of authority over nine-year-old K.S. *See McGrath v. Fahey*, 533 N.E.2d 806, 810 (Ill. 1988) (listing school authorities as an example "of the many types of individuals who may be positioned to exercise power or authority over plaintiff"). Miller is alleged to have used that authority to have K.S. locked outside of the school building, without a jacket, on a blustery March day in Chicago. At this stage of proceedings where Plaintiff need only provide enough details to "present a story that holds together," *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826-27 (7th Cir. 2014), the Court finds that Plaintiff has pled enough facts to show that Miller intentionally abused her position of authority in disciplining K.S. and that her choice of discipline rose to the level of "extreme and outrageous" conduct. *See, e.g., Black ex*

18

*rel. J.D. v. Littlejohn*, 19 C 2585, 2020 WL 469303, at *8 (N.D. Ill. Jan. 28, 2020) (finding plaintiff had alleged enough to make her IIED claims plausible, "particularly because they involve acts by teachers").

Likewise, Plaintiff's allegations that K.S. began crying when he realized he was locked outside and sees a psychologist for the "trauma" that he experienced at Fiske make it plausible that he suffered severe emotional distress as a result of Miller's conduct. *Honaker*, 256 F.3d at 495 ("Illinois courts have been more inclined to characterize [ ] emotional distress as severe" where it has manifested "either through physical symptoms or has necessitated medical treatment"). Plaintiff's allegations are therefore sufficient to plausibly state an IIED claim against Miller.

The Court, however, does not reach the same conclusion as to Plaintiff's IIED claim against Smith. Other than parroting the three elements of IIED, R. 64 ¶¶ 138-139, 141, Plaintiff provides no factual allegations that support the inference that Smith engaged in extreme and outrageous conduct. Rather, Plaintiff's allegations depict Smith only as a passive observer. *See* R. 78 at 9 (citing R. 64 ¶¶ 28-29) ("Miller … told [K.S.] that she was going to 'put him outside[,]' … and *Smith watched* Polk push him out into the cold.") (emphasis added); *id.* (citing R. 64 ¶ 46) ("Miller spewed [lies] to K.S.'s grandfather and CPD officers … and[] *Smith watched* on without correcting the false narrative.") (emphasis added). Smith cannot be held liable for IIED "just because she observed and failed to stop certain instances" of other defendants' tortious conduct. *Kibbons v. Taft Sch. Dist. 90*, 563 F. Supp. 3d 798, 814 (N.D. Ill. 2021). Nor does Plaintiff suggest that some form of vicarious liability applies

19

to hold Smith liable for the actions of others. Accordingly, Plaintiff has failed to plausibly state an IIED claim against Smith.

In sum, Defendant Miller's motion to dismiss Count XII is denied. Defendant Smith's motion to dismiss Count XIII is granted.

## CONCLUSION

The Individual Defendants' motion to dismiss, R. 74, is granted in part and denied in part. The Court dismisses the following claims without prejudice: (1) Plaintiff's Fourteenth Amendment equal protection claim under 42 U.S.C. § 1983 against Miller, Polk, and Smith (Count I); (2) Plaintiff's state law assault claims against Miller and Smith (Counts VIII and IX); and (3) Plaintiff's state law IIED claim against Smith (Count XIII). Defendant Smith is dismissed as a defendant, as there remain no claims pending against her.

Date: 10/2/2023

_____
JEREMY C. DANIEL
United States District Judge